IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LUIS ANGEL MALDONADO      :    Civil No. 1:25-CV-02398
FLORES,                                       :
                                                      :
      Petitioner,                      :
                                                      :
      v.                                    :
                                                      :
CRAIG LOWE, *et al.*,                   :
                                                      :
      Respondents.                  :    Judge Jennifer P. Wilson

**MEMORANDUM**

Before the court are a petition for writ of habeas corpus under 28 U.S.C. § 2241 and a motion for contempt and sanctions filed by Petitioner Luis Angel Maldonado Flores ("Flores"). (Docs. 1, 6.) Because the court finds that Flores's petition is moot and that the court lacks jurisdiction to adjudicate his claim, the petition will be dismissed. And, although the court finds that Respondent violated the court's temporary restraining order, Flores's motion for contempt and sanctions will be denied.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

In 2003, at age four, Flores was brought to the United States by his parents. (Doc. 1, ¶ 21.) In 2004, Flores and his mother were granted voluntary departure from the United States. Because they did not leave the United States at that time, the voluntary departure was converted to a removal order. (*Id.* ¶¶ 23–25.) In 2015, Flores applied for and was granted Deferred Action through the DACA program.

1

(*Id.* ¶ 26.)  Then, in 2017, Flores's father took him back to Honduras where conditions deteriorated after his arrival.  (*Id.* ¶¶ 27–29.)  Flores states that he feared for his safety and, as a result, reentered the United States in 2021 without inspection.  (*Id.* ¶ 30.)  On December 2, 2025, Flores was taken into custody by Immigration and Customs Enforcement ("ICE") agents and detained at Pike County Correctional Facility.  (*Id.* ¶ 32.)

On December 12, 2025, Flores filed the petition presently before the court against Respondents Craig Lowe, Warden of Pike County Correctional Facility; Kristi Noem, Secretary of the Department of Homeland Security; and Pamela Bondi, United States Attorney General.  (Doc. 1.)  Therein, Flores asks the court to declare that his deportation to Honduras violates the Immigration and Nationality Act ("INA") and the United States Constitution, enjoin Respondents from removing Flores until the immigration court has ruled on his motion to reopen his immigration proceedings and he has exhausted judicial review of that motion, and order Flores's release from custody pending the motion to reopen litigation.  (*Id.*)  On Saturday, December 13, 2025, Flores filed an emergency motion for temporary restraining order ("TRO") and stay of removal.  (Doc. 2.)  The next day, Sunday, December 14, 2025, the court granted the motion for TRO ordering "in the interest of judicial efficiency and to preserve the status quo" that Respondents shall not remove Flores from the United States until the court could resolve the pending

2

habeas petition.  (Doc. 3, pp. 4–5.)  The court also ordered service on the United States Attorney's Office and issued a briefing schedule.  (*Id.* at 5–6.)  The order, petition, and motion for TRO were emailed to the United States Attorney's Office for the Middle District of Pennsylvania Civil Division Chief, Richard Euliss, and Assistant Chief, Timothy Judge, at 8:33 a.m. on Sunday, December 14th.  Mr. Judge responded at 9:39 a.m. with "thank you."

Then, on December 17, 2025, Respondents filed a response to the petition advising the court that Flores was transferred to Texas on December 13, 2025, and was removed from the United States at approximately 11:50 a.m. EST on December 14, 2025.  (Doc. 4, p. 4.)  Flores subsequently filed a motion for contempt and sanctions, which has been fully briefed.  (Docs. 6, 8, 10.)  Thus, both the petition and motion for contempt and sanctions are ripe for review.

### STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2241(c)(3), a district court may consider a writ of habeas corpus when an immigration detainee is "in custody in violation of the Constitution or laws or treaties of the United States."  Claims related to an immigration detainee's request for release from confinement must be brought as a habeas petition as these "claims fall within the 'core' of the writ of habeas corpus." *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025) (quoting *Nance v. Ward*, 597 U.S. 167 (2022)).  Jurisdiction for "core habeas petitions . . . lies in only one district: the

district of confinement." *Id.* (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004)) (internal quotations omitted).  At the time Flores filed his petition, he was detained at the Pike County Correctional Facility, which is within the Middle District of Pennsylvania.  *See* 28 U.S.C. § 118(b).

### DISCUSSION

Before addressing the merits of Flores's petition, the court must determine whether his petition is moot and whether the court has subject matter jurisdiction over his claims.

### A. Flores's petition is moot.

In response to the petition, Respondents argue that Flores's petition is moot because he is no longer in ICE custody, and thus, there is no relief that this court can provide.  (Doc. 4, pp. 5–7.)  Flores asserts that Respondents could continuously avoid correcting violations by removing detainees from the United States, which would make a "mockery of the constitution itself."  (Doc. 6, p. 6 (quoting *United States v. Peters*, 9 U.S. 115, 136 (1809)).)  He further argues that he can continue litigating his removal from the United States.  (*Id.* at 7–8.)

Generally, a petition for habeas corpus becomes moot when the petitioner is released from custody before the petition has been addressed on the merits.  *DeFoy v. McCullough*, 393 F.3d 439, 441 (2005) (citing *Lane v. Williams*, 455 U.S. 624, 631 (1982)).  This is so because for a case or controversy to exist, the petitioner

"must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Id.* (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)).  However, there are instances when a petitioner may obtain judicial review by showing that "secondary or 'collateral injuries' survive after resolution of the primary injury." *Vasquez v. Aviles*, 639 F. App'x 898, 902 (3d Cir. 2016) (quoting *Chong v. INS*, 264 F.3d 378, 384 (3d Cir. 2001)).

Here, Flores submits that he has suffered collateral consequences by being removed from the United States in violation of a court order and, due to his past unlawful presence in the United States, he faces a mandatory bar on lawful reentry. (Doc. 6, p. 7.)  The Third Circuit addressed the same argument in *Vasquez v. Aviles*, 639 F. App'x 898 (3d Cir. 2016).  The court held that the "alleged collateral consequence is therefore incapable of being redressed by any court and cannot save [the] petition from mootness." *Id.* (citing *Abdala v. I.N.S.*, 488 F.3d 1061, 1064 (9th Cir. 2007) ("For a habeas petition to continue to present a live controversy after the petitioner's release or deportation, . . . there must be some remaining 'collateral consequence' that may be redressed by success on the petition.")).  Thus, even if Flores's habeas petition were successful on the merits, there is no action to be redressed by this court since the order of removal was

executed and he is no longer detained in the United States.  For this reason,

Flores's petition is moot and will be dismissed.

## B. The court also lacks jurisdiction over Flores's claims.

Respondents alternatively argue that the court lacks jurisdiction to preclude

ICE from executing a final order of removal.  (Doc. 4, pp. 7–14.)  Among other

relief, Flores requested a declaratory judgment that his deportation from the United

States to Honduras violates the INA and the United States Constitution, and that

the court issue an order enjoining Respondents from removing him until he has

exhausted judicial review of his pending motion to reopen immigration

proceedings.  (Doc. 1, p. 19–20.)  Respondents assert that 8 U.S.C. §§ 1252(g) and

1252(b)(9) strip the court of jurisdiction to adjudicate Flores's petition.  (Doc. 4,

pp. 8–14.)

The INA was amended by Congress to add Sections 1252(b)(9) and (g) to

Title 8 to "prevent removal proceedings from becoming 'fragment[ed], and hence

prolong[ed].'" *Tazu v. Att'y Gen.*, 975 F.3d 292, 296 (3d Cir. 2020) (quoting *Reno*

*v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 487 (1999)).  These

sections funnel "most claims that even relate to removal" into one proceeding

starting with a petition for review of a final removal order before the court of

appeals.  *Id.* (citing *E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec.*, 950 F.3d 177,

180 (3d Cir. 2020)).  Section 1252(g) provides:

6

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including Section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

Thus, if a noncitizen challenges the commencement of proceedings, the adjudication of his case, or the execution of a removal order, Section 1252(g) "funnels jurisdiction over that challenge into a petition for review in a single court of appeals" regardless of whether it is a constitutional or statutory challenge. *Tazu*, 975 F.3d at 296 (citations omitted).

Flores attempts to avoid Section 1252(g) by arguing that the question he presents "is not why the Secretary chose to execute the removal order," but rather "whether the way Respondents acted accords with the Constitution and the laws of this country," which is not a question of discretion in Flores's view. (Doc. 6, p. 10.)  No matter how Flores attempts to frame the issue before the court, his petition is barred by Section 1252(g).  In *Tazu*, the Third Circuit addressed the petitioner's argument that his constitutional and statutory objections challenged the Attorney General's authority to execute his removal order. *Tazu*, 975 F.3d at 297–98.  The court held that Section 1252(g) and Third Circuit precedent preclude the filing of a habeas petition that challenges "the execution of any removal order that might trigger allegedly unlawful effects." *Id.* at 297.  That is what Flores attempts

here.  Thus, the court must also dismiss Flores's petition for lack of subject matter jurisdiction.

**C. The court will deny Flores's motion for civil contempt and sanctions.**

Flores sets forth several arguments in his motion for civil contempt and sanctions.  He argues that pursuant to the All Writs Act, 28 U.S.C. § 1651, and in order to avoid violating the Suspension Clause, the court had the inherent power to stay Flores's removal pending resolution of his habeas petition.  (Doc. 6, p. 13.) Flores also argues that his motion for TRO complied with Federal Rule of Civil Procedure 65 in that it contained a certification of counsel's attempts to notify Respondents of the motion.  (*Id.* at 14–15.)  Further, even if the TRO was legally defective, the Collateral Bar Doctrine requires parties to abide by a court order until it is stayed or overturned.  (*Id.* at 15–16.)  Flores submits that civil contempt of court and coercive sanctions, as well as returning Flores to the United States to litigate his habeas and immigration claims are necessary remedies to rectify Respondents' disregard of the court's TRO.  (*Id.* at 17–22.)

Respondents first argue that they lacked "actual knowledge" of the court's TRO.  (Doc. 8, pp. 15–16.)  They assert that although the court emailed a copy of the TRO to counsel for Respondents, their Sunday morning reply was simply a "courtesy reply."  (*Id.* at 15.)  Counsel did not review the order or appreciate that the court entered a TRO until Monday morning.  (*Id.*)  If counsel had actual

knowledge of the TRO, they assert that they would have taken action to comply with the order. (*Id.* at 15–16.)  Next, Respondents contend that Flores's motion for TRO did not comply with Federal Rule of Civil procedure 65(b)(1)(B) regarding notice to opposing counsel. (*Id.* at 16–18.)  Lastly, Respondents argue that the motion should be denied because granting any relief would be futile as the court lacks jurisdiction over Flores's habeas petition. (*Id.* at 18–32.)

At the outset, the court will address Respondents' "actual knowledge" argument.  Rule 65 only binds those who receive "actual notice" of the order.  *See* Fed. R. Civ. P. 65(d)(2).  Rule 65(d)(2) provides that a TRO "binds only [those] who receive actual notice of it by personal service or otherwise."  Courts within the Third Circuit have noted that service to an email address provides actual notice of a court order particularly when that email address has been used to communicate with a party previously.  *See U.S. Sec. & Exch. Comm'n v. Ieremenko*, 19-CV-505, 2019 WL 13248864, at *2 (D.N.J. May 6, 2019); *Clorox Co. v. SSARM Inc.*, No. 2:23-CV-04122, 2023 WL 11957488, at *3 (D.N.J. Aug. 23, 2023).  Here, the court served the TRO and related documents by email on Mr. Euliss and Mr. Judge using email addresses previously used to communicate with each of them.  Thus, the court is satisfied that Respondents, through counsel, received "actual notice" under Rule 65(d)(2).  Respondents do not contest "actual notice."

Instead of arguing that they did not receive "actual notice," Respondents assert that they did not have "actual knowledge" of the TRO. Respondents' argument that counsel's receipt and acknowledgment of the court's order on Sunday, December 14, 2025, failed to provide "actual knowledge" of the TRO is beside the point. Actual knowledge is not a textual requirement of Rule 65(d)(2), and the court has not identified any case addressing that requirement in the context of Rule 65. [1] Black's Law Dictionary defines "actual knowledge" as: "Direct or clear knowledge, as distinguished from constructive knowledge," which is also termed "express actual knowledge," and "Knowledge of information that would lead a reasonable person to inquire further," termed "implied actual knowledge." *Knowledge*, BLACK'S LAW DICTIONARY (12th ed. 2024). Here, counsel acknowledges that they received the email and the attachments, which included the TRO, motion for TRO, and petition, on Sunday, December 14, 2025. Counsel also confirmed receipt of the email by replying with "Thank you." However, counsel advised that they did not open and review the attachments to the email until Monday, December 15, 2025. Counsel's failure to open documents that have been received and acknowledged does not, in this court's view, amount to lack of actual

---

[1] It should be noted that Respondents provide no authority or definition of "actual knowledge." (*See* Doc. 8, pp. 15–16.)

knowledge.[2]  Even accepting that counsel did not have "express actual knowledge" because they failed to open and read the attachments, counsel certainly had "implied actual knowledge" because they had knowledge of information that would lead a reasonable attorney to inquire further.  Indeed, receiving an email from the court's courtroom deputy serving a court order and related attachments early on a Sunday morning would lead a reasonable attorney to inquire further by opening and at least skimming the attachments.  For these reasons, Respondents' actual knowledge argument fails.

Next, the court finds that Flores's motion for TRO complied with Rule 65. Rule 65(b)(1)(B) provides that a "court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if . . . the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."  Respondents argue that Flores failed to satisfy this requirement because he did not include a statement as to why notice should not be required to Respondents.  (Doc. 8, pp. 16–17.)  They further submit that one voicemail left on the general phone line for the United States Attorney's Office does not fulfill the good faith effort requirement.  (*Id.* at 8.)  Flores does not

---

[2] If the court were to accept Respondents' argument that "actual knowledge" – defined as reading the TRO once you receive it – is required before compliance with a TRO is compelled, then any party receiving notice of a TRO could avoid compliance simply by refusing to read the order.  That is, quite clearly, an absurd result.

11

respond to the argument regarding whether he provided reasons why notice should not be required. (*See* Docs. 6, 10.) He does argue that telephonic notice to the general voicemail was appropriate because no counsel was listed on the docket for Respondents at the time when Flores filed his motion for TRO. (Doc. 6, p. 14; Doc. 10, p. 4–6.)

The court finds that Flores satisfied Rule 65(b)(1)(B). Counsel for Flores made a good faith effort to reach the United States Attorney's Office in this district by calling on Friday, December 12, 2025, at approximately 12:00 p.m. (*See* Doc. 6, p. 14.) Counsel left a message on the main phone number voicemail, but no one returned her call. (*Id.*) Further, the court is satisfied regarding the reason why notice to Respondents was not required in this instance. The motion for TRO was filed on Saturday, December 13, 2025, and asserted that Flores's removal was imminent. Although the motion did not use the exact terminology stated in Rule 65(b)(1)(B), the court inferred that the matter was sufficiently urgent that issuing a TRO on an *ex parte* basis was warranted due to the asserted imminence of Petitioner's removal.

Lastly, the parties disagree as to whether the court had the authority to issue the TRO in this case. Flores submits that the All Writs Act, 28 U.S.C. § 1651, permitted the court to enjoin Respondents and enforce the court order. (Doc. 6, p. 15.) He also argues that the Collateral Bar Doctrine required Respondents to obey

the TRO even if it was later stayed, overturned, or determined to be unconstitutional or improper.  (*Id.* at 15–16.)  Respondents, in turn, argue that the court lacks jurisdiction over Flores's claims, thus, any requested relief in the motion for civil contempt and sanctions is essentially futile.  (Doc. 8, pp. 19, 24–31.)  They further submit that the All Writs Act is inapplicable to claims that are jurisdictionally barred under Sections 1252(g) and 1252(b)(9).  (*Id.* at 31–32.)

The court agrees with Respondents that the All Writs Act cannot be relied on to even temporarily grant a stay of removal.  In *Vasquez-Colocho v. Attorney General of United States*, No. 25-2835, 2025 WL 3718361, at *2–3 (3d Cir. Dec. 19, 2025), the Third Circuit vacated an order temporarily granting the petitioner's emergency motion to stay removal while the court considered the merits of the habeas petition.  The court held that the petitioner could not "rely on the All Writs Act, or 'any other provision of law,' because § 1252 provides 'the sole and exclusive means for judicial review of an order of removal.'"  *Id.* at *2 (citations omitted).  The court continued: "The All Writs Act, 28 U.S.C. § 1651, cannot expand our limited review since it 'does not itself confer any subject matter jurisdiction, but rather only allows a federal court to issue writs "in aid of" its existing jurisdiction.'"  *Id.* at *3 (quoting *United States v. Apple MacPro Comput.*, 851 F.3d 238, 244 (3d Cir. 2017)).

13

Furthermore, because the court lacks jurisdiction over Flores's habeas petition, the TRO did not prevent Respondents from removing Flores. The Third Circuit addressed this issue in a factually similar case, *Hector G.M. v. Warden Elizabeth Detention Center*, No. 20-2521, 2021 WL 5320854, at *3 (3d Cir. Nov. 16, 2021). There, the district court granted a TRO staying the removal of petitioner from the United States while his habeas petition was pending. *Id.* at *2. Petitioner was then removed from the United States after the TRO was entered. *Id.* The district court ultimately dismissed the petition for lack of subject matter jurisdiction under Section 1252(g). *Id.* In reviewing the matter on appeal, the Third Circuit stated:

> First, García Mendoza tries to sidestep subsection (g) by contending that ICE lacked the authority to remove him after the District Court issued a temporary restraining order. But subsection (g) applies not just to appellate courts; it also strips jurisdiction from district courts. And in the District Court, García Mendoza brought a challenge to the execution of his removal order: he wanted to enjoin his removal to allow him more time to reopen his immigration proceedings and to apply for a U-visa. Because subsection (g) deprives federal courts of jurisdiction over such challenges, the District Court lacked jurisdiction to issue the temporary restraining order. Thus, that order did not prevent ICE from removing García Mendoza.

*Id.* at *3. Thus, like the court in *Hector G.M.*, this court lacked jurisdiction to issue the TRO, thus, Respondents were not prevented from removing Flores.

Flores's argument that the Collateral Bar Doctrine requires a person to obey a court order, regardless of legality of the order, until it is stayed or overturned also

fails.  Flores's relies on *GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.*, 445 U.S. 375, 386 (1980) (emphasis added), wherein the court stated "that persons subject to an injunctive order issued by a court *with jurisdiction* are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order."  As discussed *supra*, the court lacks jurisdiction in this matter.  As a result, the Collateral Bar Doctrine is inapplicable here.  For this reason, the court must deny the motion for civil contempt and sanctions.

## CONCLUSION

Accordingly, for the reasons stated herein, the court will dismiss Flores's petition for writ of habeas corpus and deny his motion for civil contempt and sanctions.  An order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: March 16, 2026